UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM L. PEARCY,

                Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                Defendant.

No. CASE NO. C08-5573RBL

REPORT AND RECOMMENDATION

Noted for May 1, 2009

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). Plaintiff, William Pearcy, brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying his applications for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.

REPORT AND RECOMMENDATION - 1

This matter has been briefed, oral argument was heard on April 7, 2009, and after reviewing the record, the undersigned recommends that the Court affirm the administrative decision.

## INTRODUCTION AND PROCEDURAL HISTORY

Born in October 1984, Plaintiff was 20 years old on his amended alleged onset date of disability. He completed the ninth grade, received a GED, and attended DeVry University for approximately one year. Plaintiff has past relevant work experience as a janitorial assistant, receptionist, housekeeper, laborer, dishwasher, and grocery bagger. According to a psychiatric assessment, dated January 17, 2006, Plaintiff has a background history of anti-social behavior and extensive involvement in the criminal justice system.

Plaintiff filed his applications for disability benefits on July 27, 2006 (Tr. 112-18, 119-23). For purposes of establishing entitlement to benefits under Title II, Plaintiff had insured status through September 30, 2006 (Tr. 125). Mr. Pearcy claims disability due to an anxiety disorder, depression and back problems. He originally alleged disability beginning January 1, 2004. However, Mr. Pearcy later amended his alleged disability onset date to February 1, 2005, when he stopped working as a courtesy clerk at Safeway (Tr. 30).

Plaintiff's applications were denied initially and upon reconsideration (Tr. 69-72, 74-77, 79-82). Plaintiff then requested a hearing before an ALJ (Tr. 88). On July 6, 2007, the ALJ heard testimony from Plaintiff and Olaf Eagleson, a vocational expert (Tr. 27-36). On November 27, 2007, the ALJ issued a decision applying the five-step sequential evaluation process and finding that Plaintiff was not disabled (Tr. 7-26). 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2005. At step two, the ALJ found that depressive disorder, not otherwise specified;

REPORT AND RECOMMENDATION - 2

rule out bipolar disorder; anxiety disorder, and; rule out post-traumatic stress disorder were severe impairments. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal the requirements of a listed impairment. The ALJ then determined Plaintiff's residual functional capacity:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels, except that the claimant should not climb ladders and should avoid heights and hazards. Further, regarding his mental capacity, the claimant retains the ability to perform simple, repetitive tasks that involve limited supervision, no public contact, and no prolonged or intimate contact with coworkers. Essentially, the claimant can perform jobs where he is given a simple assignment and then left to perform the work, with occasional checking by a supervisor .

Tr. 20.

At step four, the ALJ found Plaintiff unable to perform any of his past relevant work (Tr. 24, Finding 6). At step five, relying on the testimony of the vocational expert and considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy, such as housekeeping cleaner and product assembler. Therefore, the ALJ found that Plaintiff was not disabled. On July 25, 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision subject to judicial review. 20 C.F.R. §§ 404.981, 416.1481, 422.210.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir.2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

REPORT AND RECOMMENDATION - 3

Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir.2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (*internal citations omitted*). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if his or her impairments are of such severity that he or she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process (noted above) to determine whether an individual is disabled as defined under the Social Security Act. 20 C.F.R. §§ 416.920, 404.1520. Plaintiff has the burden of proof as to the first four steps; the Commissioner has the burden of proof on the fifth and final step. Bowen, 482 U.S. at 146 n. 5. The final or fifth step of the process is, in turn, divided into two parts. First, the Commissioner

must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

Here, Plaintiff argues, in his Opening Brief, the ALJ's erred in the following manner:

1. the ALJ erred when he did not find Mr. Pearcy had a severe Axis II disorder;

2. the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of examining psychologist Dr. Daniel Neims; and

3. the ALJ did not give specific and legitimate reasons for rejecting the opinion of examining psychiatrist Dr. Elizabeth Koenig.

After carefully reviewing the briefing and record, the undersigned finds the ALJ's findings are properly supported by substantial evidence and without legal error. Specifically, the undersigned finds ALJ properly reviewed the medical evidence and his reasoning for accepting the opinion of Dr. Lysak, rather than Dr. Neims or Dr. Koenig, is properly supported by substantial evidence. The court should affirm the administrative decision.

## DISCUSSION

### A. *The ALJ Properly Evaluated the Medical Opinion Evidence*

Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting or discounting the opinions of Dr. Neims and Dr. Koenig. Rather than adopt either of these two medical opinions, the ALJ in this matter relied on the opinion of Dr. Lysak and Dr. Clifford's approval of Dr. Lysak's opinion to determine Plaintiff's residual functional capacity.

Dr. Lysak was a consulting or reviewing specialist, while Dr. Neims and Dr. Koenig were both examining, but not treating, physicians. The ALJ must provide "clear and convincing"

REPORT AND RECOMMENDATION - 5

reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir.1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). "The opinion of

a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

There are no physical limitations presented in this matter, hence, the ALJ's analysis is focused on Plaintiff's non-exertional or mental limitations. In his decision, the ALJ noted and summarized the opinions from Dr. Neims, Dr. Koenig, Dr. Lenza, Shauna Potter, and Dr. Baer with respect to Plaintiff's mental health. Tr. 12-17. Considering the medical evidence and record as a whole, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and found:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, except that the claimant should not climb ladders and should avoid heights and hazards. Further, regarding his mental capacity, the claimant retains the ability to perform simple, repetitive tasks that involve limited supervision, no public contact, and no prolonged or intimate contact with coworkers. Essentially, the claimant can perform jobs, where he is given a simple assignment and then left to perform the work, with occasional checking by a supervisor.

Tr. 20.

The ALJ's finding is properly supported by substantial evidence. On September 11, 2006, Dr. Lysak, who is a state agency non-examining psychologist, reviewed the available medical evidence and assessed Plaintiff 's mental limitation (Tr. 273-286). Dr. Lysak assessed Plaintiff's mental disposition considering schizophrenic, paranoid and other psychotic disorders, affective disorders, anxiety-related disorders, personality disorders, and substance addiction disorders. Dr. Lysak did not find any functional limitations associated with substance addiction,

REPORT AND RECOMMENDATION - 7

but with respect to the other four categories of disorders (which included personality disorders) Dr. Lysak found the following:

- mild restriction of activities of daily living;
- moderate difficulties in maintaining social functioning;
- moderate difficulties in maintaining concentration, persistence, or pace; and
- no episodes of decompensation.

On January 25, 2007, Dr. Clifford reviewed and affirmed Dr. Lysak's evaluation (Tr. 331-332). The ALJ's assessment of Plaintiff's residual functional capacity reflects Dr. Lysak's mental impairment evaluation and therefore, is properly supported by substantial evidence.

The ALJ accepted Dr. Lysak's review of Plaintiff's mental impairments rather than either Dr. Neims' or Dr. Koenig's assessment. On August 18, 2006, Dr. Neims, evaluated Plaintiff and diagnosed a personality disorder (Tr. 246). Dr. Neims saw Mr. Pearcy again on June 14, 2007. He diagnosed an avoidant personality disorder with borderline traits (Tr. 464). Dr. Neims concluded that Mr. Pearcy would have marked (very significant limitations) in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting (Tr. 247, 224). In his June 14, 2007 examination, Dr. Neims found "Mr. Pearcy is seen as disabled from sustained gainful employment for the foreseeable 12 months or longer. . . His predominant difficulties with regard to sustained gainful employment include his ability to tolerate work stress, work cooperatively with coworkers and employers without avoidance and task abandonment, maintaining consistent and stable sense of self in the face of workplace stressors, and avoid decompensation into patterns of paranoid ideation anxiety and mood disruption" (Tr. 465).

The ALJ addressed Dr. Neims opinion, stating:

REPORT AND RECOMMENDATION - 8

> I do not find his opinion or his conclusion persuasive. While Dr. Neims may offer an opinion regarding the claimant's functioning, ultimately, the issue of whether a claimant is disabled under the Social Security Regulations is an issue specifically reserved to the Commissioner. 20 C.F.R. § 404.1527; Social Security Ruling 96-5p. I also note, as discussed above, that the claimant was not honest with Dr. Neims regarding his use of substances. Namely, I note that the claimant presented to the hospital in September 2006 with alcohol related symptoms and also tested positive for cannabis. Also, despite the importance Dr. Neims placed on the claimant's alleged pain issues, the claimant reported as recently as November 2006 that he was in "good medical health and he is without any acute physical problems." Ex. 11F.20. I also note that previous testing showed that the claimant completed Trials A & B within normal limits, had an IQ above 85, and his cognition was intact despite some allegations of auditory hallucinations. See e.g. Ex. 2F.1. While there appears to be some merit regarding the claimant's difficulty getting along with others, I also note that the claimant interacted successfully with medical professionals, for the most part; had a girlfriend throughout the relevant period, visited with his brother, and lived with his girlfriend and a roommate. I also note that the claimant took care of his girlfriend's young children, contradicting Dr. Neims' conclusions regarding the claimant's inability to tolerate stress and tendency to abandon tasks. It appears that there is a certain element of volition involved, characterized as a disability conviction by the State agency, particularly with regard to task abandonment, as evidenced by the fact that the claimant persists with tasks when necessary, such as seeking out an apartment and caring for young children. Finally, while I have not assigned this opinion significant weight, I note that most of the issues raised by Dr. Neims are addressed in the above finding. For example, the claimant is limited to the performance of simple, repetitive tasks that involves very little sustained interaction with others.

Tr. 23.

Substantial evidence in the record, cited or referred to by the ALJ, supports the reasons the ALJ discounted Dr. Neims' opinion. For instance, in June 2007 Plaintiff denied any ongoing alcohol or drug abuse to Dr. Neims (Tr. 460). However, as noted by the ALJ, on September 28, 2006, Plaintiff visited the emergency room with alcohol related symptoms (Tr. 386-87) and tested positive for marijuana (Tr. 389). Dr. Neims was not fully aware of Plaintiff's past use of drugs and alcohol. Moreover, Dr. Neims' report does not accurately reflect Plaintiff's social life with his girlfriend. Finally, Dr. Lysak's assessment of Plaintiff's mental limitations is inconsistent with Dr. Neim's more severe ratings and reasonably more consistent with the ALJ's

REPORT AND RECOMMENDATION - 9

interpretation of the record as a whole. The ALJ's analysis of the record as a whole also included the assessment and opinion of Dr. Lenza, who reported that Plaintiff was only mildly limited by his mental impairments. The ALJ provided clear and convincing reasons to properly discount the opinion of Dr. Neims.

With regard to Dr. Koenig, a psychiatrist, the ALJ similarly discounted her opinion but to a lesser degree. Dr. Koenig evaluated Plaintiff on August 19, 2006, and she diagnosed a personality disorder not otherwise specified with obsessive compulsive and antisocial traits (Tr. 265). At the time of the evaluation, Plaintiff reported living in his van, cooking meals in his parents' kitchen. Plaintiff reported occasionally visiting a couple of friends. Dr. Koenig reported that Plaintiff's concentration and persistence is impaired, but his pace is reasonable. The ALJ addressed Dr. Koenig's opinion, stating:

> In reaching the above [RFC] finding, I also considered the opinion of Dr. Koenig, but did not find it fully persuasive. In September 2006, Dr. Koenig opined that the claimant was "fairly anergic and poorly motivated;" thus, it was "quite unlikely that he would seek employment, maintain regular attendance, and work quickly and effectively." Ex. 3F.7. She also opined that the claimant would likely simply stop working when he began to feel overwhelmed, consistent with his previous work experiences. As explained above, the record evidences significant volitional involvement, as the claimant appeared to persist at tasks he found necessary. However, I note that I have limited the kind of tasks and the required interaction to address such concerns.

Tr. 23.

The ALJ's RFC accommodates most of Dr. Koenig's (and Dr. Neims') mental assessment. However, the ALJ properly rejected the more severe ratings or assessments, such as Dr. Koenig's comment that Plaintiff would be unable to maintain work when he felt overwhelmed. The ALJ referenced the same reasons for discounting Dr. Koenig's assessment as he did when he rejected Dr. Neims opinion. In addition, the ALJ states he has accommodated much of the concern, finding Plaintiff could not return to his past work and limited his

REPORT AND RECOMMENDATION - 10

employment potential to tasks that required only simple assignments and little supervision.  The undersigned finds no error in the ALJ's analysis of the medical evidence.  As noted above, when the medical evidence presented is inconsistent the ALJ is entitle to resolve those differences. Moreover, it bears repeating that this court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir.2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.  The ALJ provided sufficient reasons to rely on Dr. Lysak, rather than Dr. Neims or Dr. Koenig.  The ALJ's interpretation of the evidence was rational, and thus, the court should affirm the administrative decision.

### *B. The ALJ Properly Evaluated Plaintiff's "Severe" Impairments*

At step two, the ALJ found that depressive disorder, not otherwise specified; rule out bipolar disorder; anxiety disorder, and; rule out post-traumatic stress disorder were severe impairments.  Plaintiff alleges the ALJ erred when he failed to discuss why he was not finding Mr. Pearcy had a severe personality disorder.  Plaintiff asks the Court to remand this case for further proceedings to ensure that the symptoms and limitations arising from Mr. Pearcy's personality disorder are considered by the ALJ.

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996).  An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).  The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe."  According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work  activities,"  20

REPORT AND RECOMMENDATION - 11

C.F.R. §§ 404.1520(c), 404.1521(a)(1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85-28 ("SSR 85-28"). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988)(adopting SSR 85-28).

After reviewing the record, this court finds the ALJ properly considered the medical evidence, as discussed above. Included in the ALJ's consideration of the medical evidence was his analysis of Plaintiff's mental impairments, including a personality disorder. The ALJ did not list a personality disorder in his specific step two finding, i.e., the ALJ only listed depressive disorder, bipolar disorder, anxiety disorder and post traumatic stress disorder as severe impairments (Tr. 12). However, as discussed and noted above the ALJ specifically relied on Dr. Lysak's assessment of Plaintiff's mental impairments, and Dr. Lysak specifically included a personality disorder in his review and evaluation of Plaintiff's limitations. The ALJ's RFC incorporated Dr. Lysak's evaluation of Plaintiff's mental limitations. It is clear to this court that the ALJ's properly considered and incorporated all of Plaintiff's mental limitations, including a personality disorder when he evaluated Plaintiff's residual functional capacity and his ability to perform work in the national economy. Accordingly, the court finds no error at step-two.

CONCLUSION

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also*

REPORT AND RECOMMENDATION - 12

Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 1, 2009**, as noted in the caption.

DATED at this 10th day of April, 2009.

*[signature]*

J. Richard Creatura
United States Magistrate Judge